## Chester Monthly Meeting Petition

*Edmund Jones*, for petitioner.

*Hinkson & Cantlin*, for intervenor.

*Lois G. Forer, Deputy Attorney General* and *Anne X. Alpern, Attorney General*, for Commonwealth.

SWENEY, P. J., January 6, 1961.—This matter is before us upon question being raised by the Attorney General of Pennsylvania as to whether the best price is being procured by the Chester Monthly Meeting of the Society of Friends for a piece of land owned by the Society of Friends on the west side of Edgmont Avenue, between Sixth and Seventh Streets, in the City of Chester, this county.

On May 18, 1959, the society presented its petition to the court, requesting a hearing to determine whether it should have the right to vacate the property on Edgmont Avenue as a cemetery. The petition and all subsequent proceedings have been pursuant to the provisions of the Act of June 25, 1913, P. L. 551, 9 PS §48. After hearing on August 4, 1959, a decree was entered authorizing the removal of the dead and vacating the land forever for burial purposes. On February 11, 1960, the society presented its petition, requesting the right to sell the land to Seymour Adelman for $105,000. A hearing was duly held and Samuel C. Warwick and Joseph Gold appeared and offered

$120,000 for the property. On March 17, 1960, the hearing judge, Sweney, P. J., handed down an opinion and decree directing the sale of the land to Seymour Adelman for $105,000.

On April 7, 1960, before the sale was consummated, the Attorney General of Pennsylvania filed her petition to intervene, alleging that the Society of Friends is a charitable corporation, that the Attorney General has supervision for the protection of charitable corporations and requesting a rule to show cause why the sale, as decreed, should not be set aside and the property sold on the open market for the highest price. By order filed April 22, 1960, the decree entered March 17, 1960, was set aside, the Attorney General was given leave to intervene and the case was listed for further testimony.

Further testimony was taken, and it was developed that the Society of Friends had placed the matter of the cemetery in the hands of a committee, with power to act; that the committee had procured the services of George M. Heffron, realtor and real estate appraiser, who had appraised the property at $185,000; that Seymour Adelman had made an original offer of $85,000, which was later raised to $105,000, after an appraisal of the property by J. Wayne Hamilton, realtor and appraiser; that this offer was accepted and an agreement of sale executed, without advising the society about the Heffron appraisal. On August 15, 1960, an order was entered, setting aside the agreement of sale, dated April 28, 1959, between the Society of Friends and Adelman and directing the sale of the property to the highest bidder.

Thereafter, on August 24, 1960, Seymour Adelman filed his petition, requesting the right to intervene and to offer additional testimony; on September 9, 1960, the case was reopened, Seymour Adelman was permitted to intervene and further testimony was direc-

ted to be taken. This testimony has been taken and the matter is now before us for final decision.

There are several questions of law for decision: First, is the Society of Friends a charitable body under the laws of this Commonwealth which gives to the Attorney General the right to supervise and protect, thus insuring to the congregation the highest price; second, may the agreement of sale between the society and Adelman be set aside, because of the failure of the society's trustees to disclose to the membership the full dealings which led to the execution of the agreement of sale?

We are obliged to the Attorney General, through her deputy, Lois G. Forer, Esq., for cooperation and assistance in this matter, but we cannot agree that the Attorney General is properly a party in this case, as we are of the opinion that this cemetery, owned by the Society of Friends, does not constitute a public charity. Pruner's Estate, 390 Pa. 529 (1957), states the principle of law clearly:

"The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trusts accrue. But because the public is the object of the settlors' benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement. Consequently, the Commonwealth itself must perform this function if charitable trusts are to be properly supervised. The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers." See also Garrison Estate, 391 Pa. 234, 238.

Clearly, then, the test of a charitable corporation which requires the supervision of the Attorney General, is whether the general public is the beneficiary of the trust rather than, as contended by the Attorney

General, that the corporation is tax exempt. If this were not so, no church could sell any property without the intervention of the Attorney General; this is not the purpose of the pertinent legislation.

We come next to the question as to the responsibility of this court in approving the sale of this property to Adelman. The statutory authority for sale of cemeteries is found in the Act of June 25, 1913, P. L. 551, sec. 3, §9 PS 49. It is admitted and agreed by all parties that the bodies have been removed from this cemetery in conformity with the decree of this court. It is necessary for us to interpret the act as it applies to the sale of this property; the court of quarter sessions *may*, upon the petition before us, "authorize and empower the said managers, trustees or other officers . . . to sell said burial ground at public or private sale, either as a whole or divided into lots, as *they* may deem most advisable and most likely to realize the most money." (Italics supplied). It will be noted that the court may authorize a sale; the word "shall" is not used; also the word "they" refers to the managers, trustees or officers of the corporate cemetery.

Referral to the case In re Petition of Chester Monthly Meeting of the Religious Society of Friends, 56 D. & C. 231, discloses the facts that this society is a church or religious corporation, duly incorporated by decree of this court on March 31, 1925, as of no. 1790, December term, 1924, and that the society holds title to the land in question by virtue of a deed, dated May 27, 1940, and recorded in the office for the recording of deeds in and for Delaware County in deed book no. 1110, page 465; that the land now in question was under agreement of sale, at that time, for the price or sum of $156,600, and the court refused to permit the removal of bodies and the sale of the property.

The record now before us shows that the bodies have been removed from the cemetery and reinterred

in accordance with the decree entered August 4, 1959; that a petition requesting leave to sell has been duly presented; that there is a bona fide offer of $120,000 before the court and that a great deal of testimony has been taken to ascertain what has happened and why the society requests the right to sell to Seymour Adelman.

The following facts are admitted as undisputed: The society received a great deal of adverse and unkind criticism as a result of the attempt to sell in 1946; from time to time inquiries were received as to whether the property was for sale and no action was taken by the society; in 1959, Adelman, who owns the Lincoln Store next to the graveyard, made an offer of $85,000 for the property; he was prompted to do this because of his need for parking space and additional facilities in this locale and because the graveyard interposed a dead space in this business area which was a deterrent to business.

The society directed its trustees to secure an appraisal, to guard against publicity, to protect the society from court costs, in case the court refused to permit the removal of graves and to use its own judgment as to the sale of the property. The Heffron appraisal of $185,000 was procured, the only use of which was to have the trustees refuse the Adelman offer and to suggest to Adelman that he secure an appraiser. Adelman, at his own expense, employed J. Wayne Hamilton, who valued the property at $105,000; Adelman increased his offer to this figure; the trustees suggested $135,000 as the price, but Adelman refused. The trustees agreed to sell for $105,000, but required Adelman to pay the court costs and counsel fees for the application to the court for leave to remove the bodies. At no time did the trustees or the society advertise the property for sale, look up old inquiries or place the property in the hands of a real estate man. There is

some conflict in the evidence as to how much the trustees told the members of the society.

As we view the law in this report, however, the testimony above outlined has no bearing upon whether the court will approve or disapprove the society's request to sell the property. It is to be remembered that the primary question before this court is the right of sepulchre; in common law, there was no right to remove bodies from land consecrated for burial purposes. The present action was brought under the Act of June 25, 1913, P. L. 551, 9 PS §§48, 49, 50.

After the removal of the bodies, the society presented its petition, requesting that the society be authorized and empowered to sell the property. It then became necessary for the court to satisfy itself that the order regarding removal of the bodies had been duly complied with. Being satisfied, the court, in its discretion, may authorize and empower the sale. Under the act, it is the responsibility of the society, its officers and trustees to sell at public or private sale, as a whole or in lots, for the best price obtainable, to pay expenses and liens and to hold and use any balance for such uses, objects and purposes as the society shall direct.

This being our interpretation of the law, we enter the following

### Decree

And now, January 6, 1961, it appearing that the order of court dated August 4, 1959, authorizing the removal of bodies buried in the cemetery of the Chester Monthly Meeting of the Religious Society of Friends on Edgmont Avenue, in the City of Chester, County of Delaware and State of Pennsylvania, has been fully complied with, it is ordered and decreed that the said Chester Monthly Meeting of the Religious Society of Friends be, and it is hereby, authorized and empowered to sell at public or private sale, either as a whole or

divided into lots, as said society and/or its trustees may deem most advisable and most likely to realize the most money and to make, execute and deliver to the purchaser or purchasers a deed or deeds therefor, which deed or deeds shall vest in said purchaser or purchasers a perfect and indefeasible fee simple title, free and clear from all claims or interest of said Society and of all owner or owners of lot or lots in said burial-ground, the proceeds thereof being substituted in all respects for said ground, the following described burial ground or cemetery: . . .